TWENTY-FIRST JUDICIAL CIRCUIT COURT
ST. LOUIS COUNTY, MISSOURI

HELENA WEATHERSPOON,

    Plaintiff,

v.

GENERAL CREDIT ACCEPTANCE
COMPANY,
Serve:
C T Corporation System
120 South Central Avenue
Clayton, MO 63105

    Defendant.

Case No.
Division: 

## PETITION

Plaintiff Helena Weatherspoon ("Weatherspoon"), through her attorneys Sandberg Phoenix & von Gontard PC, sues Defendant General Credit Acceptance Company's ("GCAC"):

### Nature of Case

1. This is a consumer class action against GCAC, and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by GCAC regarding collection, enforcement, repossession and disposition of collateral, and collection of alleged deficiencies.

2. As described below, GCAC wrongfully repossessed Plaintiff's and numerous other consumers' collateral because GCAC or its predecessor either failed to send the right to cure notice required by section 408.554 ("Right to Cure Notices") or sent defective Right to Cure Notices before repossession. A copy of the Right to Cure Notice sent to Weatherspoon is attached as **Exhibit A** and incorporated by this reference.

EXHIBIT 5

3. As described below, GCAC sent Plaintiff and numerous other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by Missouri. A copy of the presale notice sent to Weatherspoon is attached as **Exhibit B** ("Presale Notice") and incorporated by this reference.

4. Plaintiff sues for herself and all other similarly situated consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

5. Weatherspoon is a resident of St. Louis County, Missouri.

6. GCAC is a corporation duly organized and existing under the law and doing business in St. Louis County, Missouri.

## Jurisdiction and Venue

7. This Circuit Court of St. Louis County, Missouri has jurisdiction over this matter under Article V, section 14 of the Missouri Constitution and § 478.070, which grant Missouri circuit courts original jurisdiction over all civil cases and matters.

8. Class members may have damages over $25,000.

9. The class members' damages in the aggregate are over $5,000,000.

10. Venue is proper in this Court under § 508.010 because GCAC is a resident of and may be found in St. Louis County, Missouri.

## General Allegations

11. Weatherspoon signed a consumer credit contract for the purchase of a 2001 Chevrolet Malibu ("Property"). A copy of said contract is attached as **Exhibit C** and incorporated by this reference.

12. The Property was bought for use primarily for personal, family or household purposes.

13. GCAC or its predecessor either failed to send Right to Cure Notices or sent defective Right to Cure Notices to Plaintiff and the Missouri Class (defined below) that failed to:

   a. state the following: "If you voluntarily surrender possession of the following specified collateral, you could still owe additional money after the money received from the sale of the collateral is deducted from the total amount you owe."; or

   b. notify the consumer that the consumer may owe additional money after the money received from the sale of the collateral is deducted from the total amount owed.

14. GCAC or its predecessor accelerated the balance due on Plaintiff's consumer credit contract without giving the required Right to Cure Notices.

15. GCAC or someone at GCAC's direction repossessed the Property without giving the required Right to Cure Notices.

16. Under section 408.555, GCAC or its predecessor wrongfully accelerated Plaintiff's and the Missouri Class's consumer credit contracts by failing to give the required Right to Cure Notices before acceleration.

17. Under section 408.555, GCAC wrongfully repossessed Plaintiff's and the Missouri Class's collateral by failing to give the required Right to Cure Notices before repossession.

18. After repossessing the Property, GCAC or someone at GCAC's direction sent the Presale Notice (Exhibit A) to Plaintiff, advising her of GCAC's intent to dispose of the Property in purported compliance with the UCC.

19. The Presale Notice sent to Plaintiff and the presale notices sent to the Missouri Class fail to comply with the UCC in at least one of the following respects:

    a. The presale notices were not authenticated as required by § 9-611(b).

    b. The presale notices were not reasonable as required by § 9-611(b) because the presale notices' stated disposition date did not provide sufficient time for the notified person to: (1) discharge the debt and reclaim the collateral, (2) find another purchaser, or (3) verify the sale is conducted in a commercially reasonable manner.

    c. The presale notices were not reasonable as required by § 9-611(b) because the presale notices stated redemption payments must be made in cash or certified funds when payments in such form are not legally required under the consumer credit contracts.

    d. The presale notices were not reasonable as required by § 9-611(b) because the presale notices were misleading given the Property was wrongfully repossessed.

20. GCAC failed to send Plaintiff and the Missouri Class reasonably authenticated notices as required by § 9-611 of the UCC.

21. GCAC or someone at GCAC's direction disposed of the Property ("Disposition") after sending the Presale Notice.

22. After Disposition, GCAC or someone at GCAC's direction sent post-sale notices to Plaintiff and the Missouri Class explaining how it calculated the deficiency.

23. The post-sale notices sent to Plaintiff and the Missouri Class fail to comply with § 9-616 of the UCC because they misstate the deficiency balances owed by including amounts that were wrongfully accelerated.

24. GCAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

25. Plaintiff and the Missouri Class were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

26. On information and belief, GCAC or someone at GCAC's direction has unlawfully collected or attempted to collect deficiency balances from Plaintiff and other consumers issued defective right to cure, presale and post-sale notices.

27. On information and belief, GCAC or someone at GCAC's direction has unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Plaintiff and other consumers issued defective right to cure, presale and post-sale notices.

28. Besides the unlawful repossession of collateral and collection or attempt to collect deficiency balances, time price differentials, and delinquency and collection charges from consumers, GCAC has maintained, on information and belief, a practice and policy of reporting derogatory information regarding the Class members to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the right to cure, presale and post-sale notice requirements.

### Class Allegations

29. Plaintiff sues for herself and a class designated under Rules 52.08(a) and 52.08(b)(3) of the Missouri Rules of Civil Procedure to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed thereby.

30. The Missouri Class comprises all persons ("Missouri Class"):

    a. who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with GCAC or assigned to GCAC;

    b. whose loan or financing agreement was secured by collateral;

c. whose collateral was repossessed from April 20, 2006 to the present.

31. The Missouri Class is believed to be so numerous that joinder of all members is impractical.

32. There are questions of law and fact common to the Missouri Class, which common issues predominate over any issues involving individual class members.

33. The principal legal questions common to Plaintiff and each Class member are whether (1) the presale and post-sale notices complied with the UCC; and (2) the Right to Cure Notices complied with section 408.554.

34. Plaintiff's claims are typical of the claims of the Missouri Class.

35. Plaintiff's claims are based on the same factual and legal theories as the Missouri Class's claims.

36. Plaintiff's and the Missouri Class's rights derive from written, form contracts and documents.

37. The violation alleged by Plaintiff and the Missouri Class derives from written, form presale and post-sale notices that fail to comply with the UCC and Right to Cure Notices that fail to comply with section 408.554.

38. Plaintiff and each member of the Missouri Class were damaged and are entitled to recover actual damages not less than the minimum damages provided by the UCC due to GCAC's failure to provide proper Right to Cure, presale notices and post-sale notices.

39. Plaintiff will fairly and adequately represent and protect the interests of the Missouri Class.

40. Plaintiff has no interests antagonistic to those of the Missouri Class and Plaintiff's counsel is competent and experienced in consumer and class litigation.

41. Plaintiff and all class members have an interest in determining the adequacy of the Right to Cure Notices, presale notices and post-sale notices they received from GCAC and to recover damages due to the statutorily defective notices.

42. The questions of law or fact common to the Missouri Class predominate over any questions affecting only individual members.

43. Plaintiff and each member of the Missouri Class will rely on the same basic evidence (i.e., the form Right to Cure Notices, presale notices and post-sale notices).

44. Determining the deficiency of the Right to Cure Notices, presale notices and post-sale notices resolves all class members' claims because each notice sent to the Missouri Class suffers from at least one of the same deficiencies as Plaintiff's notices.

45. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

46. The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

47. Most class members are probably unaware their rights and Missouri law have been violated.

48. If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

49. Concentrating the litigation of Plaintiff's and the class members' claims in this forum is also desirable and logical given the predominance of common questions of law and fact alleged above.

50. The class should be certified under Missouri Supreme Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

51. Plaintiff also seeks a declaration that the form of Right to Cure Notices, presale notices, and post-sale notices used by GCAC fail to comply with Missouri law.

52. The statute of limitations applicable to Plaintiff and the Missouri Class's claims were tolled as of April 20, 2012, by the class action claim filed in *General Credit Acceptance Company v. Deaver*, Case No. 11SL-AC28887.

## Count I – UCC Violations

53. Plaintiff repeats the allegations set forth above as if set forth in Count I.

54. GCAC violated the UCC by failing to provide the notice required under the UCC prior to disposing of collateral secured by loans entered into or assigned to GCAC.

55. GCAC deviated from the form of notification in § 9-614(3) of the UCC when sending presale notices to Plaintiff and the Missouri Class.

56. GCAC's presale notices to Plaintiff and the Missouri Class included additional language or content not allowed by law or the consumer credit contracts, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

57. As required under § 9-611, GCAC failed to provide "reasonable authenticated notice of disposition" to Plaintiff and the Missouri Class.

58. GCAC's failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC renders GCAC liable for actual damages not less than the minimum damages provided by § 9-625(c)(2) of the UCC.

## Count II – Wrongful Repossession

59. Plaintiff repeats the allegations set forth above as if set forth in Count II.

60. Section 408.555 prohibits GCAC from accelerating the maturity of the unpaid balance, taking possession of the collateral or otherwise enforcing its security interest until the notice required by section 408.554 is given.

61. GCAC or its predecessor failed to give Plaintiff and the Missouri Class the notice required by section 408.554 before it accelerated the maturity of the unpaid balances under the consumer contracts.

62. GCAC or its predecessor failed to give Plaintiff and the Missouri Class the notice required by section 408.554 before it repossessed the collateral secured by the consumer contracts.

63. GCAC or its predecessor wrongfully accelerated the maturity of the unpaid balances under the consumer contracts.

64. GCAC wrongfully repossessed the collateral secured by the consumer contracts and deprived Plaintiff and the Missouri Class the loss of use of tangible property.

65. As a direct and proximate result of GCAC's wrongful repossession, Plaintiff and the Missouri class suffered actual damages not less than the minimum damages provided by § 9-625(c)(2) of the UCC, including:

    a. loss of use of tangible property;

    b. all monies paid to GCAC by Plaintiff and the Missouri Class for the time price differential and delinquency and collection charges on the consumer contracts; and

    c. other uncertain and hard-to-quantify actual damages.

66. The Right to Cure Notices given by GCAC or its predecessor were given based on GCAC's own understanding of the law or based on the representations of others on which GCAC reasonably relied.

67. GCAC or its predecessor did not intend to give Right to Cure Notices to any persons violating section 408.554.

68. GCAC or its predecessors did not intend to wrongfully repossess collateral secured by the consumer credit contracts because it believed it or its predecessor complied with section 408.554 before it repossessed the collateral.

69. GCAC did not intend to injure Plaintiff and the Missouri Class or violate sections 408.554 and 408.555.

70. GCAC's or its predecessor's failure to provide a notice sufficient under §§ 408.554 and 408.555 before acceleration and repossession is a violation of § 365.145.

71. GCAC's wrongful repossession of the collateral secured by the consumer contracts renders the presale notices unreasonable and misleading in violation of §§ 9-611 and 9-614 because, among other reasons, it misstates the consumer's redemption rights.

72. GCAC's wrongful acceleration of the maturity of the unpaid balances under the consumer contracts renders the post-sale notices unreasonable and misleading in violation of § 9-616 because, among other reasons, it misstates the deficiency balances owed by including unpaid balances that had not become due without acceleration.

73. GCAC's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

74. GCAC's failure to provide notices sufficient under §§ 9-611, 9-614 and 9-616 of the UCC before commencing its claim for a deficiency judgment violates sections §§ 408.556, 408.557, and 365.145.

75. Under § 365.150.2, GCAC's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contracts that it collected from Plaintiff and the Missouri Class.

76. Plaintiff and the Missouri Class are entitled to attorney's fees under section 408.562.

### Prayer for Relief

Plaintiff prays this Court certify the Class and enter a judgment for Plaintiff and the Missouri Class against GCAC:

    a. awarding actual damages not less than the minimum damages provided by the UCC;

    b. prejudgment and post-judgment interest;

    c. attorney's fees;

    d. a preliminary and permanent injunction enjoining GCAC from engaging in the practices alleged, including without limitation, enjoining GCAC from collecting deficiency judgments, time price differential, delinquency and collection charges;

    e. a mandatory injunction compelling GCAC to return any money collected for deficiency judgments, time price differential, delinquency and collection charges;

    f. a mandatory injunction compelling GCAC to remove any adverse credit information which may have been wrongfully reported on the Plaintiff's and the Missouri Class's consumer credit reports;

    g. a declaration that the Right to Cure Notice, presale notices and post-sale notices sent by GCAC to Plaintiff and the Missouri Class fail to comport with the statutory requirements; and

h.  for such other and further relief as this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: _____
Martin L. Daesch #40494
Jesse B. Rochman, #60712
600 Washington Avenue – 15th Floor
St. Louis, MO 63101
(314) 231-3332
(314) 241-7604 Facsimile
mdaesch@sandbergphoenix.com
jrochman@sandbergphoenix.com

*Attorneys for Plaintiff*

FILE COPY

April 27, 2012

Helena D Weatherspoon
9121 Clarion Drive
Saint Louis Mo, 63136

NOTICE OF DEFAULT

Name, Address and Telephone Number of Lender:

CAR CREDIT ACCEPTANCE COMPANY, LLC
P.O. Box 692
Bridgeton, MO 63044-0692
Phone: 314-373-5500

| Account Number: | Retail Installment Contract and Security Agreement Dated: |
|---|---|
| 11727-A1 | 02/07/2012 |

YEAR/MAKE/MODEL:
2001 Chevrolet Malibu   VIN: 1GND52J216212144

| Over-Due Payments | Due Date | Amount Due |
|---|---|---|
| Payment Charge | 04/17/2012 | 190.00 |
| **Total Amount Now Due** | | 190.00 |

Your account is past due (by at least ten (10) days) and you are in default under the Retail Installment Contract and Security Agreement.

$190.00 is the AMOUNT NOW DUE and/or the amount required to bring your account current. The CURE DATE or the LAST DATE FOR PAYMENT is: May 17, 2012.

If you pay the AMOUNT NOW DUE (immediately above) by the LAST DATE FOR PAYMENT (above), you may keep your vehicle and continue with the contract as though you were not late. If you do not pay by that date, we may exercise our rights under the law.

You may voluntarily surrender possession of the vehicle to reduce the balance owed on your contract and the money received from the sale of the vehicle will be deducted from the total amount you owe.

THIS MAY BE THE LAST NOTICE YOU RECEIVE REGARDING YOUR DELIQUENT ACCOUNT.

EXHIBIT 1


EXHIBIT
A

General Credit Acceptance Company, LLC
P.O. Box 682
Bridgeton, MO 63044-0682
TELEPHONE: 314-209-0263



Debtor(s) Name(s) and Address(es):
Helena D Weatherspoon
9121 Clarion Drive                    05/19/12
Saint Louis Mo, 63136

Date of Notice:

Account Number:
11727-A1

Buyer: Helena D Weatherspoon
Co-Signer:

DESCRIPTION OF PROPERTY
2001 Chevrolet Malibu
V.I.N. # 1GIND52J216212144

Date of Repossession: 05/19/12

NOTICE OF OUR PLAN TO SELL PROPERTY

We have your property described above because you are in default under your Retail Installment and Security Agreement.

PRIVATE SALE: We intend to apply for a repossession title and will sell the property described above at a private sale sometime after 06/02/12.

The money that we get from the sale (after paying our costs as permitted by law) will reduce the amount you owe. If we receive less money than you owe, you will owe us the difference. If we get more money than you owe (after paying our costs as permitted by law), you will get the extra money, unless we must pay it to someone else.

You can get the property back at any time before we sell it by paying us the full amount you owe (not just the past due payments), including our costs and expenses permitted by law. To learn the exact amount you must pay, call us at the telephone number above.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may call our Finance Manager at the telephone number above, or write us at the address above, and request a written explanation.

If you need more information about the sale, call our Finance Manager at the telephone number above, or write us at the address above.

We are sending this notice to the following people who have an interest in the property described above or who owe money under your agreement: 1) the Buyer and any Co-Signer named above; and 2) if there are other people, they are named on an attachment sent with this notice.

PERSONAL PROPERTY: Any personal property found in the vehicle may be reclaimed by you, in accordance with state law, by contacting our Finance Department at the phone number above before the sale of the property described above. Thereafter, the personal property will be disposed of.

- PAYMENTS: All payments to redeem must be made in CASH only.

EXHIBIT 3

EXHIBIT

# CAR CREDIT CITY
## RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

No. 17727
Date: 08/19/2011

**Seller:** CAR CREDIT CITY, LLC
12750 St. Charles Rock Rd., Bridgeton, MO 63044
(721) W. 5th St., Eureka, MO 63025
1225 McNutt Road, Herculaneum, MO 63048

"We," "our" and "us" mean the Seller named above, its successors and assigns.

**Buyer:** HELENA D WEATHERSPOON
**Address:** [illegible] CLARK DR
**Phone:** [illegible]
**Email:** [illegible]

"You" and "your" mean each Buyer named above, and any Co-Signer, jointly and individually.

SALE: You agree to purchase from us on a credit basis, subject to the terms and conditions of this Retail Installment Contract and Security Agreement ("Contract"), the Property (Vehicle) described below. The Security Interest referred to herein, together with related accessories, are also secured.

| Condition of Motor Vehicle | New / Used | Year | Make | Model | VIN | Odometer |
|---|---|---|---|---|---|---|
| Used | | 2001 | Chevrolet | [illegible] | 1G1ND52J41M627264 | |
| | | 1993 | Oldsmobile | Intrigue | 1G4WS52K0PF523410 | |

SECURITY: To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle and all accessories, attachments, accessions, and equipment now or later affixed to the Vehicle (collectively called the "Property"), and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased in connection with this Contract.

PROMISE TO PAY AND PAYMENT TERMS: You promise to pay us the principal amount of $ 11541.00, plus finance charges accruing on the unpaid balance at the rate of 29.00 % per year from today's date until paid in full. Finance charges accrue on a 365 day basis. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any other amounts according to the terms and conditions of this Contract.

DOWN PAYMENT: You also agree to pay, or apply to the Cash Price (as shown in ITEMIZATION OF AMOUNT FINANCED), on or before today's date, any cash, rebate, and/or trade-in value (described within ITEMIZATION OF AMOUNT FINANCED). ☐ You agree to make deferred payments ("Bump Payments") as part of the cash down payment, as indicated in your Payment Schedule.

RETURNED CHECK CHARGE: If you make any payment required by this Contract with a check or negotiable instrument that is returned or dishonored, you agree to pay the actual charges for processing the check or negotiable instrument, plus a fee of $25.00.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 500.00 |
|---|---|---|---|---|
| 28.82 % | $ 7780.42 | $ 11541.00 | $ 19321.42 | $ 19821.42 |

**Payment Schedule:** Your payment schedule will be:

| Number of Payments | Amount of Payment | When Payments Are Due |
|---|---|---|
| 101 | 190.00 | Bi-Weekly Beginning 09/02/2011 |
| 1 | 148.42 | Last Payment Due 07/17/2015 |

SECURITY: You are giving a security interest in the Property, including the Vehicle purchased, and the proceeds thereof.
Late Charge: If all or any portion of a payment is more than 15 days late, you will be charged an amount of 5% of the payment due, or 5% of the minimum payment due, or $25.00, whichever is less. Except that the minimum late charge for installments of more than $25.00 will be $10.00. When the installment may be $25 or less, you will be charged $5.
Prepayment: If you pay off this Contract early, you will not have to pay a minimum finance charge.
Contract Provisions: You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

PROPERTY INSURANCE: You must insure the Property securing this Contract under a policy that provides at least collision and comprehensive coverage. [...illegible...]

Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract.

NO WARRANTY; LIMITATION OF LIABILITY: THE VEHICLE IS SOLD AS-IS, WITH NO WARRANTY. THE VEHICLE IS SOLD IN ITS PRESENT CONDITION. WE WILL NOT PAY FOR REPAIRS. WE EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. UNDER NO CIRCUMSTANCES WILL WE BE LIABLE FOR DAMAGES INCURRED BY YOU IN CONNECTION WITH THE PURCHASE OF THE VEHICLE, INCLUDING, WITHOUT LIMITATION, SPECIAL, INCIDENTAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, DAMAGES TO OR LOSS OF PROPERTY, LOSS OF TIME, LOSS OF USE, LOSS OF PROFITS OR INCOME, OR COSTS AND EXPENSES OF USE OR REPLACEMENT, REGARDLESS OF WHETHER SUCH DAMAGES ARE SOUGHT IN CONTRACT, TORT OR OTHERWISE. OUR LIABILITY UNDER THIS CONTRACT IS LIMITED TO THE AMOUNTS PAID BY YOU UNDER THIS CONTRACT.

Agreement for Buyer's 1-Day Right to Exchange Motor Vehicle is hereby incorporated by this reference and made a part hereof.

WE AND YOU AGREE TO WAIVE ALL RIGHTS TO A TRIAL BY JURY IN CONNECTION WITH ANY CAUSE OF ACTION RELATED TO ANY AGREEMENT OR TRANSACTION BETWEEN YOU AND US.

ASSIGNMENT: This Contract is assigned to Car Credit Acceptance Company, LLC, the Assignee. The assignment is made under the terms of a separate agreement.

Seller By: _____ Date: _____

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Cash Price | $ 11995.00 |
| Seller's Rebate | $ 0.00 |
| Cash Down Payment | $ 0.00 |
| Bump Payment | $ 0.00 |
| a. Total Cash/Rebate Down | $ 0.00 |
| b. Trade-In Allowance | $ 500.00 |
| c. Less: Amount owing | $ 0.00 |
| Paid to: | |
| d. Net Trade-in (b. minus c.) | $ |
| e. Net Cash/Trade-in (a. plus d.) | $ 500.00 |
| Down Payment (e.; disclose as $0 if negative) | $ 500.00 |
| Unpaid Balance of Cash Price | $ 11495.00 |
| Paid to Public Officials - Filing Fees | $ 2.50 |
| Amount to Finance (on a. if a. is negative) | $ 0.00 |
| To: Lienholder | $ 7.00 |
| To: MO Sales/Processing | $ 35.00 |
| To: [illegible] | $ 0.00 |
| To: [illegible] | $ 0.00 |
| Total Other Charges/Amounts Paid to Others | $ 88.00 |
| Less: Prepaid Finance Charges | $ 0.00 |
| Amount Financed | $ 11541.00 |

Any charge with an asterisk may include amounts retained by us.
The Annual Percentage Rate may be negotiable with the Seller.

**NOTICE TO THE BUYER**
DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE.

BY SIGNING BELOW, BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.

Buyer Signature: _HELENA D WEATHERSPOON_ Date: 08/19/2011
Co-Signer Signature: _____ Date: 08/19/2011
Seller: Car Credit City, LLC
By: _____

MISSOURI RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT
[illegible copyright/form info]
MOTOR VEHICLE — NOT FOR MANUFACTURED HOMES
(Page 1 of 2)

EXHIBIT 1


EXHIBIT